Good morning, your honors. Good morning. Natalie Qandah appearing on behalf of the appellant and as appellant. Your honors, this case is again before this honorable court on appeal from the district court's order dismissing the complaint for failure to properly weigh the evidence before it and to analyze the issues under the proper legal standards for Foreign Sovereign Immunity Act or FISIA and ultimately for committing clear error in concluding that Appelese carried its burden of persuasion and production to avail itself of immunity under FISIA. Given the district court elected to evaluate the case under a factual attack rather than a facial one, the district court was indeed required to evaluate all the evidence before it. Pursuant to O'Brien v. Holy See and as this court instructed in its reversal and remand order dated January 24, 2020. In its lengthy and comprehensive 12-page opinion, this court outlined appellant's consequential evidence which for the second time the district court did not consider. Specifically, this court characterized one of many consequential pieces of evidence is the Zermay Affidavit, a neutral third party who corroborates the allegations in the appellant's case that J-Corps essentially manages, directs, operates, and controls its activities in the United States. Do you say that they do that in some way directly or do you say that Captain and Byrd are the agents of J-Corps or of Kassim? Can you kind of give me that connection that you make? Yes, your honor. It's a very good point. To speak directly, both occurs. J-Corps directs the entities directly within the United States and they also utilize their agents, Captain and Byrd, to also execute on. In what sense are they agents? Are they paid by J-Corps? Certainly, your honor, that would be a question for Mr. Zermay who is a chief financial officer for the organization and who attested to just that, the control, management, and operations. Those statements are fairly, when you say it's a question for him, but it's his affidavit that is in fact, you know, I went through and was sort of looking for, you know, they were hired, they were paid, you know, whatever, and I didn't see that sort of thing. I saw a conclusory statement. Am I missing something? I don't, I don't know that, I don't believe that it is dispositive whether Joe Hoare, how Joe Hoare paid these two agents, whether it was, you know, I would venture to say that How they, but did they at all, that is, their paychecks come from WLC? I don't, I cannot answer that question, your honor, and I'm not sure that's dispositive of the issue because they formed, whether it was collectively or independently, Joe Hoare, or Jake Hoare, formed these entities in conjunction with, you know, Captain and Byrd possibly. I don't know if Captain and Byrd have ownership interest in Joe Hoare. That would be something for the litigation purposes, but, yes. Can I ask you, just to clarify, set aside the facts of this case. We're interpreting a statute, the Foreign Sovereign Immunities Act, and I'm not entirely clear on your position on the underlying law of how you determine one party's actions should be imputed to another party, so whether Captain and Byrd, whether they were agents of Jake Hoare, is that a, do we just look to federal common law? Is there special foreign sovereign immunity law on when some, some one party's conduct should be imputed to another? I wasn't, I wasn't clear on this legal question, which seems to me to be quite critical on whether the facts that you allege rise to the required level of connection. Your honor, the agents of, of, of Joe, Jake Hoare, Kasim, there, there doesn't seem to be, the issue is not whether the actions of Captain and Byrd can be imputed to Jake Hoare, Joe Hoare, they actually took direction from them, so, so we're not talking about an alter ego theory case or piercing the corporate veil, there's direct liability. Appellant had direct communication, performed direct work for Joe Hoare, or Jake Hoare, so. Like, so under, I think under federal common law you have to have some type of, or federal agency law, or just common law agency law, you have to have one party who agrees with another party to be an agent of that party. And I'm not certain that we've seen any agents here, you're just, you're just suggesting that, that Jake Hoare gave directions and they said okay, and is that enough under common law principles to make them an agent? They are agents, your honor, and the reason why we know they're agents is because of the March 2012 correspondence from Joe Hoare to its U.S. agents. We know that G-Cell and WLC are sham entities, so given that Joe Hoare was, and we all know that Joe Hoare was upset that the U.S. employees were not hired for facilitating their business activities in the United States, and after receipt of that letter, they went out and hired all these U.S. employees. When, when, when Appellee Kassim directs Captain and Greg to execute on, you know, preventing appellant from filing a lawsuit against us in the United States, they went and executed his orders. When I, when, when, you know, Captain and Greg advised me, you need to speak with, excuse me, when Captain and Greg advised me that I need to contact, you know, Kassim over in, in Malaysia to perform work for him, that's what I did. It was clear that they were receiving instruction from Kassim and acting upon that, and Kassim was the CEO of Jake Hoare, having, after, after our oral argument here, he was, it was a forced retirement, that's immediately after the oral argument. Notwithstanding, I think that there is agency established between, and it is common law. So I think, at least on the face of things, Captain and Berg were agents of, what is it, WLA, or employees of WLA, and you seem to be suggesting maybe a veil-piercing argument that WLA and Jake Hoare were essentially one and the same? There was a blurring of lines. There were no corporate, they didn't maintain corporate distinctions, you know. That's, that's the key issue with regard to Apelli's argument. And the District Court's opinion is that they focused almost exclusively on these contracts that ostensibly govern the relationship between the parties. But when you have, when the documents are outdated, and the parties never complied with the original intent of those documents, and their behavior subsequent to those documents belie the documents itself, and there's a blurring of corporate lines. We have Apelli-Kassim, who's using G-Cell and WLC emails interchangeably with Jake Hoare emails. So they themselves knew that there really wasn't any corporate distinction. By emails you mean email addresses? Yes, yes, your honor. And with respect to Kassim, because he is a defendant, are you suing him in his personal capacity or in his official capacity as a CEO the way it's listed in the, in the caption? Both, your honor. And in his personal capacity with regard to the, the threat and the ultimate grievance that was filed against Apellant. And the, the, thereafter the opinion for superintending control in the Michigan Supreme Court. And so which, which parts were in his official capacity? You said both. He was certainly acting on behalf of Jake Hoare when he asked me and others in the United States to perform work for Jake Hoare. He was certainly acting on behalf of Jake Hoare when he required U.S. employees to travel to Malaysia and get trained by Joe Hoare, Jake Hoare. If he's acting in his official capacity and, and Joe Hoare arguably is, is immune under the Foreign Sovereign Immunities Act, so how can you proceed on those official capacity claims? I think, I think that's an important point, your honor. The Foreign Sovereign Immunity Act is not to, its purpose is to restrict liability for, for, for, for, for, for, for foreign governments, for behavior in which there is an action on behalf of a government, governmental act or action. We don't have that here. Apellees never made a claim that they were ever engaged in a governmental act. And, and so it's sort of a... I said, the way I analyze official versus personal capacity claims in the context of this is straightforward. If you, it's a personal capacity claim. If you win and get a money judgment against the person, you can't go after the person's principal for that judgment, which would mean if you get a money judgment against Kassim, you will not go after Jake Hoare with respect to that money judgment. Now, that would be a personal capacity suit. An official capacity suit is essentially suing the entity. You're using the name of the agent, but you're essentially suing the entity and you would be able to go after the foreign government in this case, if Jake Hoare is in fact a foreign state. So I think it's really just a pleading exercise. And, and so you can continue to suggest that you're suing or Kassim, you're going after Kassim and his official capacity in order to hold Jake Hoare liable and if you get a money judgment for Kassim's actions. Your Honor, I'm not seeking to hold the government of Malaysia liable for anything. I am seeking to hold Kassim liable for his behavior on behalf of Johor Corporation. Ultimately, it is Johor Corporation. However, I don't know whether he was acting in his official capacity on behalf of Johor Corporation when he instructed and told his agents to threaten or do what you need to do to prevent her from filing a lawsuit in the United States. I don't know if that was acting in his official capacity with regard to that specific issue. But I think in going back to the actual intent and purpose of the Foreign Sovereign Immunity Act, we don't have any governmental action here. And to somehow suggest that they're entitled to immunity is a farce. We're looking at a defense that says we're mere investors in these sham companies. Okay. Is that a factual finding and aren't we required to give the District Court some deference in regard to their fact finding on this motion to dismiss for lack of jurisdiction? Under ordinary circumstances, I believe so. However, in this case, because the District Court undertook a factual attack and it didn't consider the evidence before it, then no, deference is not required because clear error is committed. Okay. So you concede that we review for clear error? Well, there's two issues, Your Honor, and I think there's two paths for... There's two exceptions that you're arguing, the Commercial Activity Exception and the Tortious Act Exception. But those are pretty factual based, aren't they? And those exceptions apply here? And so you're just saying the findings of fact were clear error, were clearly erroneous? Well, Your Honor, this court instructed the District Court to review all the evidence before it. And specifically, the Zermine Affidavit, which is a critical and significant piece of evidence that the District Court, for reasons which I don't know, didn't consider. And if you look at the District Court's opinion, it is focused, almost exclusively, most of it is conclusion, that the only evidence that they do reference is the agreements, ostensibly attempting to govern the relationship of the parties, which was never complied with. There's no commentary on the Zermine Affidavit. There's no commentary on the second Zermine Affidavit, which contends that the appellees engaged in attempting to get him to recant his testimony. I would think that these are significant issues that the District Court should have considered by way of evidentiary hearing, or what have you. At the very least, the District Court should have considered. And it's not just the Affidavit of Zermine. You're out of time here. You can use your three minutes rebuttal if you want, or you can save it. I think I'll save it. Okay, you'll have it. Thank you, Your Honor. Good morning. Good morning, Your Honors. I may please the Court, Patrick Hickey, on behalf of the defendants, Appellees, Johor Corporation, and Y.B. Dado or Kassim. First, Your Honor, I'd be remiss if I didn't say and acknowledge the pleasure of appearing before a court live, and this court in particular, because you are the first court I've appeared before live in 19 months. We enjoy it, too. And I appreciate that the court system generally has finally allowed us to do that. As you know, this is the second time this case has been before the court. And that's relevant only... We recognize that the original case, the panel held that J Corp. is an organ of a foreign state. And that issue, at least to me, is the law of the case and is binding on us. I am not speaking for my colleagues, but I understand that that's the holding of the verdict. That's kind of the preliminary comment I wanted to make. But the remand was specifically for the purpose of making sure that the district court correctly applied the burden-shifting paradigm in these cases involving FISA. Regarding the two exceptions. Correct. That the burden ultimately, although burden of production to show one of the exceptions applies, is upon the plaintiff. The burden of persuasion ultimately is on the defendants. And on remand, the district court in a status of supplemental, but a renewed briefing on this issue, that we should address that specifically. And it was on the renewed briefing. And in its opinion, the court clearly, numerous times, made it clear that he was applying the appropriate burden-shifting under the O'Brien case and other cases before this court and the U.S. Supreme Court. Can I ask, just to clarify your view of the law, so is it, does FSIA adopt generic common law principles of agency law and veil piercing and other ways for one entity to be held liable for another entity's actions? Are those common law principles just incorporated into the Foreign Sovereign Immunities Act? It's a great question. And I think it's one that came front and center in this case. And I think our position at the end of the day is yes. I mean, the court, in evaluating, if the basis upon which the plaintiff claims that the actions of a foreign sovereign are those of someone domestic, in this case WLC and its agents, then the only way that the plaintiff could establish that is through some alter ego or piercing the corporate veil, etc. And I think the district court recognized that. We briefed it on appeal before this court. And the district court ultimately, placing the burden on us to establish that there was a respect for the corporate formality amongst the different entities, ruled, based upon the preponderance of the evidence, that the mere investment by JCORP into an entity in Malaysia called ALC, which then invested in WLC Sweden, which then invested in WLC U.S., was not enough to pierce the corporate veil, to assign or to impute the activities of those individuals in the United States, Byrd and Kapton, that you referred to earlier, back to those other entities in ultimately Malaysia. The facts did show, though, that Kassim, acting on behalf of JCORP, was just directing and managing everything. Setting aside this standard of review, which I recognize is quite deferential to you, could that be enough under the law to impute Kapton and Byrd's actions to JCORP? Your Honor, I think an argument could be made that even under the FFSIA, that there was enough of a disregard for the corporate organizations, and Kassim was actively engaged in the management, and it's that management of the company that resulted in the causes of action. Yes, it could potentially, in this particular case, create that. But the situation we have here is that plaintiff's own pleadings, and even the affidavit that she submitted subsequently, of Mr. Zuma, I think is his name, those affidavits, as the Court pointed out, refer to either just general assertions without any specifics, or in the case of the discrimination or the harassment or the termination, point strictly to Kapton and to Byrd. Do not point to Kassim. Do not point to JCORP. And that was ultimately the decision of the District Court, which was, even if you have activity which you can assign to this foreign sovereign in the United States, you have to show that activity resulted in this cause of action. In this case, we have a pure employment case, and all the activity that was pointed to by the plaintiff in all of the submissions to the Court were unrelated to those employment decisions, or those employment decisions. Without even getting to whether or not the activities were, the commercial activities were in fact attributable to the foreign sovereign, or whether the tort was committed by the foreign sovereign, the Court simply said all the activities that you point to, whether they be commercial in nature or otherwise, were not, or did not give rise to your cause of action, did not give rise to the tort. What do you make of, at least with respect to the email from Kassim? I forget exactly how it was phrased, but it said something to the effect of, keep me up to date, or proceed, and the plaintiff alleges that he gave a direction to file a harassment claim essentially against her. Right. And of course, the District Court addressed that, and the District Court held, after actually reading that email, that that email doesn't say that at all. Remember the context of that email. The plaintiff started sending letters to J-Corps saying that, I'm going to sue you, that we're going to file a lawsuit against you. And Kassim is asking, why are we being sued? We're an investor. It's like Warren Buffett getting a lawsuit from one of the companies that Berkshire Hathaway invests in. And he said, why are we being sued? And he says, well, proceed. Make sure you take care of it. We're not involved in any of that. And that's the context of it. And when Judge Cleland read that email, he said, that's not at all what it says, and I don't read it that way. And as the fact finder, he made a determination that wasn't involvement. It was after the fact, and there wasn't involvement by him in that. He also, and this is permeated throughout this case, has had difficulty sifting through what are the facts. And in part, that goes all the way back to, I think it was 2017-18, when there were discovery disputes, where the plaintiff claimed she was entitled to more discovery, and Judge Cleland held hearings. And in those hearings, I think it was in the April 16, 2018 order, which Judge Cleland refers to in his opinion in this case, he got a letter of 2012, which the plaintiff alleged meant that J Court was directing the hiring. Judge Cleland got that letter, read it, and he confronted the plaintiff directly and said, that is not at all what this letter says, and I don't know how you get that reading. But yet today, she continues to insist that's what it says, notwithstanding the fact that when he said the same thing, it doesn't say that. When she claimed that there's evidence in these wire transfers that J Corp sent $50 million to WLC, and that then results in an exception to the presumed immunity. And Judge Cleland looked at that and said, that's not what it says. It says ALC, this other entity which J Corp subsidiaries have an ownership interest in, sent that money. So he was constantly struggling with these facts which were asserted to be true, which in fact when he reviewed them turned out not to be true. The fact finder in this case is entitled to great deference. And that deference, as you pointed out, Judge, is clear error. Clearly erroneous is the standard that she has to establish. On the fact finder. Quickly to the claim against Kasim. The one legal question I had is, I always thought whether something was in the official capacity or personal capacity was simply a pleading exercise. Like in 1983, officers are sued all the time, police officers. They're acting as agents of the state, excessive force or other types of claims. So long as they're sued in their personal capacity, it doesn't matter that they were acting as agents of the state, because all they're seeking is a monetary judgment from the individual and not the state. So do you think that if that same framework applies here, is it a pleading, we just have to do our best to read the complaint to determine whether Kasim was sued in his personal capacity versus official capacity? I don't think it really matters that he took actions as an agent of J-Corps so long as he is only sued in his personal capacity. Do you see the point I'm trying to make? I do, and in practical pleading, I think I recognize what you're saying. But I think in this particular case, the case law on that issue, I think it was, I'm trying to remember the name of the case, it was the U.S. Supreme Court decision. Samatar? Correct. They just cited a 1983 case, and to the extent the Supreme Court suggested 1983 principles should apply, I think those are the relevant principles. And if you look at the pleadings in this case, all the allegations against Kasim all arise out of things that J-Corp did. So everything that he was being sued for was things that he either participated in or because he was the CEO, J-Corp did, and therefore he somehow was imputed liability for that. But it was acts of J-Corp, not acts of President Kasim individually where he was pursuing some individual benefit or some individual... I don't think that matters. In most 1983 cases, you wouldn't say that the officer is acting in an individual capacity when the officer arrests somebody or does something. I agree with you on that. Why wouldn't the same analysis apply here? So it's really just, are you seeking a monetary judgment against the state and using the person as essentially the way to get there? And if you are seeking a monetary judgment against the person, what are those bases of liability against the individual as opposed to the individual and the company together? In this particular case, I don't think there are any bases for liability, even if assumed to be true, against Kasim that's separate and independent from what she's seeking against J-Corp. I think they're all one and the same. So I think under that situation, your analogy is correct. What ultimately has happened both the first time around and now, especially this time, is that the appellee simply disagrees with Judge Cleland's fact-finding and decision-making. I think Judge Boggs has already pointed out that the affidavit of Steve Schirmer doesn't really address the relevant facts or the determinations that Judge Cleland made with respect to there isn't a connection between the alleged activity, even if it were to occur in the United States, and the causes of action that she pleaded. And without that connection, Judge Cleland ruled that there is no exception that applies, put the burden on the defendants to prove that, and held that, based upon the evidence, that those exceptions do not apply. Unless this panel has any questions, further questions, I'll concede the rest of my time and respectfully ask that the matter be affirmed. Thank you. Three minutes rebuttal. Your Honors, I think there's a fundamental lack of understanding of J-Corps and these entities. It wasn't just those two or three entities, there were actually 13 of them. They purposely created them to create those convoluted constructs that they could operate in the United States with impunity, and that's what they're seeking to do here today. Do you know the review is... What does it mean? I mean, our prior decision held that J-Corp is an organ of the state. I mean, we are bound by that, are we not? That's correct, Your Honor. However, it is my position that the exceptions to have been alleged, J-Corps is exclusively engaged in business across the world. They just contend they don't do it in the United States. However, I think with the affidavit, and the affidavit of Zermay was already declared by this court as, quote, consequential. It does speak to the issues and the allegations in this case, because it tells that J-Corps had control over what we did. J-Corps directed and controlled that, and in fact, part of global... J-Corps is... I mean, you can see that J-Corps as an organ of the state is entitled to immunity under the statute unless one of these two exceptions apply, right? If J-Corps is engaged in governmental actions. Okay, so whether or not those exceptions apply, they're still liable if you call it, quote, non-governmental actions. I mean, usually we think about the reason that they're liable is that, for example, commercial activities. We use that phrase. We don't say, oh, it's non-governmental. That's why they're liable. You have to get into the affirmative category of commercial activities, not the negative category of not governmental. Yes, I apologize if I misspoke, Judge Griffin. It is that the commercial activity exceptions are applicable in this case, as well as the tortious act exception. So de novo review is limited here, but it's always present when you're considering any FISIA issue. Clear error is on factual issues, and we know that the... What are we reviewing de novo? Whether they're entitled to the immunity. Okay, but to do that, we have to look at the factual findings, don't we? I mean, aren't these two exceptions really factual-based? That's correct, but the district court didn't consider the facts before it, and that's the position. That's why it made clear error, if you argue it that way. Yes. The Geneva Switzerland Labor Tribunal declared that G-Cell and WLC were not Swiss entities, and there's been no evidence proffered by Appelese to refute any of the affidavits before it. This is not a mere employment case. This is fraud in the inducement. This is tortious activity, including some additional employment claims. There's been a concerted effort to mischaracterize the evidence, and what the Zermay affidavit does is makes clear, which came in after the district court saw the March 2012 letter. That's because Mr. Zermay and I, and the other U.S. employees, are well aware of the behavior and activities, more so, unfortunately, than perhaps counsel for J-Corps. You're out of time. Any further questions? May I say one? Sure. Okay. There isn't, this is not a mere investor situation. Mere investors don't train U.S. employees. Mere investors don't direct them. Mere investors don't require them to perform work for various J-Corps entities, including ALC, which is one of the entities that we worked for, as well as that was distributing money throughout the United States. Mere investors don't do that. And I respectfully request that your honors declare that it was clear error and remand. Thank you. The case will be submitted. You may call the next case.